UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 05-10134-JLT |
| v. | ) | |
| PONNUDAURAI GUNARAJASINGAM | ) | |
| Defendant. | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The government submits this memorandum in connection with sentencing in the above referenced matter, which is currently scheduled for Thursday, October 13, 2005 at 10:00 a.m.

I. Background

On June 1, 2005 a two count information was filed that charged Ponnudurai Gunarajasingam with violation of 26 U.S.C. § 7201, tax evasion. On August 4, 2005, the defendant waived indictment and tendered a guilty plea to both Counts 1 and 2 of the Information. The defendant was released on a Personal Recognizance under Pretrial Services Supervision. According to Pretrial Services, to date the defendant has been in compliance with his release conditions.

2. Statement of Facts

Evidence developed during the investigation conducted by special agents of the Internal Revenue Service, Criminal Investigation Division, revealed that the defendant was the financial manager for two dental clinics, Dental Health International located in Chelsea MA and Lynn Dental Associates located in Lynn MA, that were jointly owned with his wife. The defendant's wife was a practicing dentist at the clinics.

The defendant was trained as an MBA who formerly worked at the Massachusetts Department of Revenue. The defendant had experience preparing tax returns, including his own returns which were self-prepared through 1992, and preparation of others' returns in exchange for a fee.

The defendant was "in charge" of running the finances of both clinics. He payed the bills, collected the receipts, made the bank deposits, maintained the records, and dealt with the return preparers regarding the tax filings for the businesses and controlled all information that was furnished them. The defendant provided typed and/or handwritten income and expense sheet He provided no back up documents. He told his first return preparer that he had no other receipts other than what was represented by Forms 1099 received from insurance companies.

In fact, the clinics maintained a book of day sheets, which listed the money received by the clinic in the form of cash, check and credit card payments. The defendant did not disclose the existence of these day sheets, and intentionally omitted most of the receipts from the summaries that he prepared for the return preparers. Accordingly, substantial income was not reported on the Schedule C of the defendant's income tax returns in 1994 and 1995.

Neither return preparer received any bank statements to support the summaries prepared by the defendant until the defendant provided statements during a civil audit.

The defendant admitted that he in fact knowingly, intentionally and willfully committed tax evasion.

3.   The Plea Agreement

Pursuant to the terms of the plea agreement, which was executed April 28, 2005, the parties agreed that the 1995 edition of the Federal Sentencing Guidelines be used to determine the base offense level. The government agreed to recommend a two point reduction from the

offense level for the defendant's acceptance of personal responsibility for the crime. The parties have no agreement concerning any particular sentencing recommendation, however, the defendant agreed that pursuant to any period of supervised release he will cooperate with the IRS Examination Division to file accurate and complete US Individual Income tax returns for tax years 1994 and 1995 and pay all delinquent taxes, with interest and penalties.

The Plea Agreement sets forth a disagreement regarding the tax loss in this case. It is the position of the government that the tax loss as a result of the defendant's conduct is approximately $68,873. It is the position of the defendant that the tax loss that resulted from his criminal conduct is less than $40,000.

4.   The Tax Loss

The government must establish the controverted tax loss by a preponderance of the evidence. McMillin v. Pennsylvania, 477 U.S. 79 (1986), United States v. Shonubi, 998 F.2d 84 (2d Cir. 1993). The Rules of Evidence do not apply to sentencing proceedings. Rule 102(d)(3), Fed.R. Evid.; U.S.S.G. § 6A1.3. There is no limitation to the information which the court may consider in imposing a sentence. 18 U.S.C. § 3661.

The Government determined the tax loss in this case using the bank deposit method of proof. The bank deposits method of proof is one of the primary indirect methods of proof used by the government in computing taxable income. United States v. Boulet, 577 F.2d 1165 (5th Cir. 1978). Under this method, all deposits to the taxpayer's bank and similar accounts in a single year are added together to determine the gross deposits. An effort is made to identify amounts deposited that are non-taxable, such as gifts, transfers of money between accounts, repayment of loans and cash that the taxpayer had in his possession prior to that year that was deposited in a bank during that year. This process is called "purification." It results in a figure called net taxable

3

bank deposits. The government agent then adds the amount of expenditures made in cash, for example, in this case, cash the clinic received from fees, did not deposit, but used to buy personal items. The total of this amount and net taxable bank deposits is deemed to equal gross income. This is in turn reduced by the applicable deductions and exemptions. The figure arrived at is considered to be "corrected taxable income." It is then compared with the taxable income reported by the taxpayer on his return. Boulet, 577 F.2d at 1167. The bank deposit method of proof seeks to show by circumstantial means that the taxpayer had income that was not reported. Holland v. United States, 348 U.S. 121, 129 (1954); United States v. Hall, 650 F.2d 994, 99 (9th Cir. 1981); United States v. Bray, 546 F.2d 851, 856 (10th Cir. 1976) ("the bank deposit method of proof is not an exact science"). The bank deposits method of proof was approved in Gleckman v. United States, 80 F.2d 394 (8th Cir. 1935). Since that time, the bank deposits method of proof has "received consistent judicial approval." United States v. Morse, 491 F.2d 149, 151 (1st Cir. 1974). See United States v. Mounkes, 204 F.3d 1024, 1028 (10th Cir.), cert. denied, 530 U.S. 1230 (2000).[1]

The defendant and his spouse operated two dental practices that produced taxable receipts. Many of those receipts were deposited into two business accounts for the dental practices. During the prosecution years 1994 and 1995, the defendant made consistent and

---

[1] The bank deposits method of proof utilizes the following steps:
1. That the taxpayer was engaged in a business or income-producing activity from which the jury can infer that the unreported income arose;
2. Periodic and regular deposits of funds were made into accounts in the taxpayer's name or over which the taxpayer had dominion and control;
3. An adequate and full investigation of those accounts was made in order to distinguish between income and non-income deposits;
4. Unidentified deposits have the inherent appearance of income, e.g., the size of the deposits, odd or even amounts, fluctuations in amounts corresponding to seasonal fluctuations of the business involved, source of checks deposited, dates of deposits, accounts into which deposited, etc. United States v. Abodeely, 801 F.2d 1020, 1023 (8th Cir.1986).

periodic deposits to and withdrawals from the two business accounts over which he had dominion and control.[2] The defendant and his wife maintained fifteen bank accounts during the prosecution period. The Special Agent analyzed all of the deposits items and amounts into the bank accounts, and identified the income items. A complete analysis of all withdrawals from all accounts was completed for 1993 through 1995. Missing items were excluded. The Special Agent used the books and records from the business, and analyzed the deposits into the defendant's bank accounts, and used the records and information from third party sources to determine the correct taxable income and tax for criminal purposes. See Exhibit 1, Tax Computation, and See Exhibit 2, Affidavit of Special Agent Stephen Bellingreri.

As a result of this analysis, the special agent determined that the corrected taxable income should be computed as amounting to ($6,893.66) for 1993, $70,145.24 for 1994, and $192,434,54 for 1995. These numbers are in stark contrast to the numbers reported by the defendant on his false returns, which reported negative taxable income for 1993 in the amount of ($143,152.00), ($206,427.00) for 1994 and ($ 79,425) for 1995 respectively.

Accordingly, as set forth in Exhibit 1 the corrected tax for 1994 owed by the defendant is $14,695, and the corrected tax for 1995, owed by the defendant is $54,178 for a total of $68,873 tax loss for 1994 and 1995.

5.  Sentencing Guidelines Computation

Guidelines section 2 T1.1 applies to violations of 26 U.S.C. § 7201. Pursuant to §2T1.1 the base offense level is determined according to the tax loss that was the object of the offense. The Tax Table set forth at §2T4.1, a tax loss of between $40,000 and $70,000 results in a

---

[2] It should be noted that the tax loss for 1993, which was $75, was not included in the criminal computations, however the year will be included for purposes of disallowing the ??? NOL in 1994.

5

Guidelines offense level of 13. No enhancements apply. The defendant admitted that he willfully, knowingly, and intentionally committed tax evasion, and accordingly, a reduction of two points for acceptance of responsibility results in an adjusted offense level of 11, with a Guidelines range of 8-14 months. Offense level 11 is within the parameters of Zone C in the Guideline range, and accordingly falls within the sentencing parameters of Guideline §5C1.1[3]

In the absence of either scenario, the tax loss would be $104,968, resulting in a base offense level of 14 under U.S.S.G. § 2T4.1 (more than $70,000 and less than $120,000).

---

[3]According to §5C1.1(d): If the applicable Guideline range is in Zone C of the Sentencing Table, the minimum term may be satisfied by –(1) a sentence of imprisonment; or (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in subsection (e), provided that at least one-half of minimum term is satisfied by imprisonment.

(E)Schedule of Substitute Punishments: (1) one day of intermittent confinement in prison or jail for one day of imprisonment (each 24 hours of confinement is credited as one day of intermittent confinement, provided however that one day sahll be credited for any calendar day during which the defendant is employed in the community and confined during all remaining hours); (2) one day of community confinement, (residence in a community treatment center, halfway house, or similar residential facility) for one day of imprisonment; (3) One day of home detention for one day of imprisonment.

## CONCLUSION

For the reasons noted above, the United States respectfully requests the Court sentence the defendant, Ponnudurai Gunarajasingam to a term of imprisonment at offense level 11, followed by a period of supervised release, a fine in the range of $6,000 to $60,000 and order restitution to the IRS, and a mandatory special assessment of $100.

                                      Respectfully submitted,

                                      MICHAEL J. SULLIVAN
                                      United States Attorney

By: _____

                                      Karen E. Kelly
                                      Trial Attorney, U.S. Dept. of Justice

                                      Scott R. Lawson
                                      Trial Attorney, U.S. Dept. of Justice

Dated: October 7, 2005

## CERTIFICATE OF SERVICE

I certify that I am today serving a copy of this pleading on the defendant's attorney, listed below, by fax.

Paul Dee, Esq.

Dated: October 7, 2005

/s/ *[signature]*

Karen E. Kelly

# Exhibit One

Summary of Unreported Taxable Income and
Tax
(For Criminal Prosecution Purposes)

**Ponnuduari Gunarajasingam**

### INCOME

| 1994 | 1995 | TOTALS |
|---|---|---|
| $276,572 | $271,860 | $548,432 |

### TAX

| 1994 | 1995 | TOTALS |
|---|---|---|
| $ 14,695 | $ 54,178 | $ 68,873 |

PONNUDUARI GUNARAJASINGAM
BANK DEPOSITS

| | | 1993 | 1994 | 1995 |
|---|---|---:|---:|---:|
| **TOTAL DEPOSITS** | | $ 999,477.69 | $ 909,183.35 | $ 1,738,257.77 |
| less: | Non-Income Deposits | $ (381,172.35) | $ (265,266.66) | $ (421,458.23) |
| Sub-Total | | $ 618,305.34 | $ 643,916.69 | $ 1,316,799.54 |
| plus: | Income not Deposited | $ - | $ 13,673.55 | $ - |
| **Gross Receipts** | | $ 618,305.34 | $ 657,590.24 | $ 1,316,799.54 |
| less: | Operating Expenses | $ (549,382.00) | $ (560,873.00) | $ (1,087,748.00) |
| **Gross Income** | | $ 68,923.34 | $ 96,717.24 | $ 229,051.54 |
| less: | Other Loss | $ (41,315.00) | $ - | $ - |
| | Rental Loss | $ (70.00) | $ (1,871.00) | $ (7,275.00) |
| | NOL Carryback | $ - | $ - | $ - |
| | IRA Deduction | $ - | $ - | $ (2,000.00) |
| | Rental Receipts | $ - | $ - | $ - |
| plus: | Form 8814 | $ 198.00 | $ - | $ 268.00 |
| | Capital Gain | $ - | $ - | $ - |
| **Adjusted Gross Income** | | $ 27,736.34 | $ 94,846.24 | $ 220,044.54 |
| less: | Itemized Deductions | $ (24,645.00) | $ (14,901.00) | $ (14,810.00) |
| | Exemptions | $ (9,400.00) | $ (9,800.00) | $ (10,000.00) |
| | Contributions | $ (585.00) | $ - | $ (2,800.00) |
| **Taxable Income** | | $ (6,893.66) | $ 70,145.24 | $ 192,434.54 |

PONNUDUARI GUNARAJASINGAM
SUMMARY OF NON-INCOME ITEMS

|    |                              | 1993         | 1994         | 199_         |
|----|------------------------------|--------------|--------------|--------------|
| 1  | TRANSFERS                    | $ 221,985.15 | $ 135,046.87 | $ 19_,_8.76  |
| 2  | MISSING ITEMS                | $ -          | $ -          | $ -          |
| 3  | DRAW-CHECKS                  | $ 40,853.55  | $ 40,444.00  | $ 9_,_5.51   |
| 4  | RENTAL RECEIPTS              | $ 6,179.31   | $ 4,724.18   | $ 1_,_6.13   |
| 5  | BANK CORRECTIONS             | $ 10,077.10  | $ 1,280.67   | $ 1,_ _7.49  |
| 6  | COMMONWEALTH REALTY          | $ 729.25     | $ 150.00     | $ _0.00      |
| 7  | TAX REFUNDS                  | $ 613.32     | $ 58.59      | $ -          |
| 8  | SANDORSE & ASSOC             | $ 30,000.00  | $ -          | $ -          |
| 9  | NON-INC CHECKS               | $ 9,485.15   | $ 7,961.35   | $ 12,_ 8.49  |
| 10 | ADP PAYROLL                  | $ 8.40       | $ -          | $ 9.96       |
| 11 | AETNA                        | $ 1,850.00   | $ -          | $ -          |
| 12 | AMERITAS                     | $ 535.50     | $ -          | $ -          |
| 13 | CARTER SHIELDS               | $ -          | $ 15,000.00  | $ -          |
| 14 | STAPLES                      | $ -          | $ 4.00       | $ -          |
| 15 | JOHN HANCOCK                 | $ -          | $ 60,000.00  | $ -          |
| 16 | RETURN CHECK                 | $ -          | $ -          | $ 39_ _0.00  |
| 17 | OVERDRAFT ITEM               | $ -          | $ -          | $ 5 2_ 0.00  |
| 18 | REDEPOSIT                    | $ 101.44     | $ -          | $ 5_ 9.46    |
| 19 | GROSSMAN'S                   | $ -          | $ -          | $ 3.07       |
| 20 | REGISTRY OF MOTOR VEHICLES   | $ -          | $ -          | $ 5.00       |
| 21 | CAMBRIDGE MUTUAL             | $ -          | $ -          | $ 5 _ 0.00   |
| 22 | PUNITHA SINGANAYAGAM         | $ -          | $ -          | $ 9,0_ 0.00  |
| 23 | PONNUDURAI PUVIRAJASINGHAM   | $ 3,300.00   | $ -          | $ -          |
| 24 | REGIONAL DENTAL EQUIP        | $ -          | $ -          | $ 1 4_ 0.00  |
| 25 | CASH BACK                    | $ 8,364.18   | $ -          | $ 3 2_ 3.00  |
| 26 | TRANSFER TO OTHER ACCTS      | $ -          | $ -          | $ -          |
| 27 | CASH WITHDRAWALS             | $ 18,400.00  | $ -          | $ 19,3_ 0.00 |
| 28 | DRAW CHECKS CASHED           | $ 28,600.00  | $ -          | $ 17,3_ 1.46 |
| 29 | MISSING ITEMS-C/C            | $ 90.00      | $ -          | $ 5_ _.90    |
| 30 | NON-TAXABLE DISTRIBS         | $ -          | $ 597.00     | $ 5_ .00     |
|    |                              | $ 381,172.35 | $ 265,266.66 | $ 421,_ _.23 |

# Exhibit Two

Affidavit of Special Agent Stephen Bellingreri

I, Stephen Bellingreri, being duly sworn, depose and state as follows:

I am a Special Agent of the Criminal Investigation Division of the Internal Revenue Service. I have employed as a Special Agent for 14 years. I have received training in conducting financial investigations and I am familiar with the procedures of the Internal Revenue Service. My function as a Special Agent is to investigate criminal violations of the Internal Revenue Service laws and tax-related offenses. During my career as a Special Agent, I have participated in and conducted numerous criminal investigations of individuals and businesses which have engaged in violations of the Federal tax laws, specifically Title 26 (Internal Revenue Code); Title 31 (Bank Secrecy Act); and related statutes of Title 18 (U.S. Criminal Code) of the United States Code (U.S.C.). I have training in the various methods of proof utilized to investigate tax cases, including the bank deposits method of proof. I have experience using the bank deposits method of proof in criminal cases that I have worked individually, and on cases that I have supervised and reviewed.

The bank deposit method of proof is an indirect method of proof used to compute taxable income of a person engaged in tax fraud. I used the bank deposit method of proof in investigating the tax fraud engaged in by Ponnuduari Gunarajasingham. The basis underlying assumption in the bank deposits method of proof is that if a taxpayer is in an income-producing activity, and regularly and periodically makes deposits to bank accounts, then those deposits, after adjustments, constitutes taxable income. Using this method of proof, I identified and confirmed that the defendant in this case (1) was

engaged in a business or income –producing activity from which the jury could infer that unreported income arose. In this case, Mr. Gunarajasingham was employed as the office manager for the two dentist practices owned by he and his wife. Numerous employees provided testimony that Mr. Gunarajasingham was the office manager of these two dental clinics who maintained all the books and records and directed all the employees on the handling of the money received from patients; (2) I identified that there were periodic and regular deposits of funds made into the accounts controlled by Mr. Gunarajasingham. There were two business accounts, and fifteen personal bank accounts that were controlled by Mr. Gunarajasingham. I reviewed them all.  The composition of each deposit was determined, to the extent possible, based on the bank records, third party records and records of Mr. Gunarajasingham. (3) I conducted a thorough and comprehensive investigation of each of those accounts in order to distinguish between income and non- income items, to determine taxable receipts. This was done through an extensive interviewing process, that involved tracking down payors of various checks deposited into the various bank accounts, and identifying sources of payments. Mr. Gunarajasingham received the benefit whenever there was a payment that I couldn't track down the source, or identify its purpose.

For 1993, 1994, and 1995 I identified $999,477.69, $909,183.35 and $1,738,257.77 in total deposits.  I identified and subtracted non- income items in the amounts of $381,172.35 for 1993, $254,266.66 for 1994 and $421,458.23 for 1995. For 1994 I added into that number $13,673.55 in income identified as not deposited. This resulted in gross receipts of $618,305.34 for 1993, $657,590.24 for 1994 and $1,316,799.54 for 1995. I subtracted operating expenses from the gross receipts, and I

took these numbers off of Mr. Gunarajasingam's tax filings. This resulted in the gross income attributable to the business, in the amounts of $68,923.34, $96,717.24 and $299,051.54 for 1993 through 1995 respectively. From these figures the tax due and owing was computed, and resulted in the taxable income of ($6,893.66) for 1993, $ 70 145.24 for 1994 and $192,434.54 for 1995. Accordingly, the tax due and owing based upon these calculations is $75 for 1993, $14,695 for 1994, and $54,178 for 1995.

*[signature]*

October 7, 2005